UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

    VINCENT MOREO and
    MARIAN NORMA MOREO,

Case No. 07-71258-dte
Chapter 7

                          Debtors.
-----------------------------------------------------------x
FRANK J. ROSSI, JR.,

                          Plaintiff,                  Adv. Pro. No. 07-8256-dte

-against-

    VINCENT MOREO and
    MARIAN NORMA MOREO,

                          Defendants.
-----------------------------------------------------------x

## MEMORANDUM DECISION

*Appearances:*

Fred S. Kantrow, Esq.
*Attorney for Plaintiff*
The Law Offices of Avrum J. Rosen, PLLC
38 New Street
Huntington, N.Y. 11743

Richard F. Artura, Esq.
*Attorney for Defendants*
Phillips, Weiner, Quinn & Artura
165 South Wellwood Avenue
P.O. Box 405
Lindenhurst, N.Y. 11757

Hon. Dorothy Eisenberg, United States Bankruptcy Judge

Before the Court are Frank Rossi's (the "Plaintiff" or the "Creditor") motion for summary judgment, and Mr. and Mrs. Moreo's (the "Defendants" or the "Debtors") cross-motion for summary judgment. The Plaintiff filed an adversary proceeding on October 5, 2007 to deny the Debtors' discharge under 11 U.S.C. §§ 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), and 727(a)(5). At issue is both the Plaintiff's and the Defendants' cross-motions for summary judgment on the §727(a)(3) and §727(a)(4)(A) causes of actions. Based on the record before the court and the relevant case law, the Court denies both motions for summary judgment. This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 157(b) and 1334(b), and venue is proper pursuant to 28 U.S.C. §1409(a). This is a core proceeding under 28 U.S.C. § 157(b)(1), (2)(I), and (J).

**Facts:**

The Debtors filed for Chapter 7 bankruptcy protection on April 13, 2007. Based on the Debtors' prior deposition testimony in this adversary proceeding, the history of the Debtors and the origin of this adversary proceeding are as follows. In 2003 the Defendants purchased North Fork Bagel for $125,000 from one Craig Grossetto, and renamed it Moreo's Bagel Café (the "Café"). While they purchased the business together, it was Mrs. Moreo who was the principal operator of the store. Mr. Moreo works for a heating and air conditioning repair company. According to his deposition testimony, he did not pay the bills, was not involved in the day-to-day activities of the business, did not meet with the accountants, or review the tax returns of the business.

Prior to owning the Café, Mrs. Moreo was a part-time counter-person at the same bagel shop for four years, and before that she was, according to her, a "homemaker." The operation was a difficult one for Mrs. Moreo, whose highest level of education was high school. In her

2

deposition testimony she stated that she did not know how to run a business, that she failed to have an accountant inspect the books and records of the business prior to purchasing it, and that she went into it "basically" blind.  (Moreo Deposition p. 33, 41)  She admittedly had difficulty keeping accurate records and books for the Café.  In fact, when asked about whether she kept a ledger for the store, she stated, "It wasn't an exact ledger it was very chaotic.  I didn't know how to take care of books.  I was running a business that was too much for me."  (Moreo Deposition, p. 47)  The Café's bank account was used sporadically and when used, Mrs. Moreo failed to account for the purposes of any deposits and withdrawals.  She also stated that she gave her accountant all of the records that she did keep and any financial information that she had.

According to Mrs. Moreo's deposition testimony, the Plaintiff, Frank Rossi, came into the picture as Mrs. Moreo was contemplating walking away from the business due to its financial difficulties.  A mutual friend put them in contact with each other, and Mr. Rossi examined the books of the business.  There is a dispute in the parties' papers as to whether Mr. Rossi asked to join the business as "50/50" partners or whether the Debtors asked him to assist them in the business.  There was only a verbal agreement between the parties as to the nature of their partnership, but both agreed that if the business was sold each would get their investment back.  The deposition testimony of the Debtors does not reveal sufficient information regarding the details of said agreement.

Mr. Rossi worked at the business from January 2004 for approximately six months until June 2004 when he had a falling out with the Debtors over how to run the business.  He commenced an action in state court against them in 2006 to recover $56,000 that he had put into the business, and on June 13, 2006 the Debtors signed an Affidavit of Confession of Judgment

3

agreeing to pay him $56,000.00. The Debtors sold the business on November 13, 2006 to Graziano & Son Enterprise. The Court is not aware of any facts pertaining thereto.

On April 13, 2007, the Debtors filed for Chapter 7 Bankruptcy due to business and medical debts, and since then have made multiple amendments to their Schedules and Means Test. On March 18, 2007 the Debtors modified their homestead exemption on Schedule C to $100,000.00 rather than the previously incorrect number of $122,551.00, and corrected errors regarding which creditors held judgment liens on Schedule F when they should have been listed on Schedule D. These changes resulted in a modification of the Summary of Schedules, the Statistical Summary of Certain Liabilities and Related Data, and Declaration Concerning Debtors' Schedules. On October 5, 2007 the Plaintiff commenced the instant adversary proceeding against the Debtors seeking to deny them a discharge under Section 727 of the Bankruptcy Code.

On January 31, 2008 additional amendments were made to Schedule B and Schedule C. To Schedule B the Debtors added three lawsuits pending against unrelated third parties, as well as Mr. Moreo's 100% shareholder interest in Moreo's Bagel & Café. The three lawsuits were a personal injury lawsuit against Beach Bar, Inc., a personal injury lawsuit against one Frank Capella stemming from a motor vehicle accident, and a worker's compensation claim. To Schedule C the Debtors added exemptions for the three lawsuits they added to Schedule B. The amendment to the Means Test was the inclusion of money from Mrs. Moreo's mother and a loan from one of the spouses' brother, neither of which brought them over the threshold for the means test. According to Mrs. Moreo's deposition testimony the amendments were made because the Debtors were confused about the questions being asked by counsel and when they went over it with counsel they modified them accordingly.

Both parties filed for summary judgment and oral arguments were had on October 16, 2008. The Court considered both arguments, and took the matter under submission.

**Discussion:**

"The Second Circuit has made clear that a denial of discharge pursuant to § 727 is a severe sanction and must be construed strictly in favor of the debtor." Pergament v. Smorto (*In re Smorto*), 2008 U.S. Dist. LEXIS 19235, *12; *see* State Bank of India v. Chalasani (*In re Chalasani*), 92 F.3d 1300, 1310 (2d Cir. 1996). Due to the total bar on the Debtors' discharge that would occur under § 727, a court must be mindful of the impact of granting summary judgment against the Debtors.

*1. Section 727(a)(3)*

Section 727(a)(3) provides that a discharge be denied to a debtor if the debtor has "concealed … falsified, or failed to keep or preserve any recorded information … from which Debtor's financial condition or business transactions might be ascertained, unless such an act or failure to act was justified under all circumstances of the case."

Two elements must be proven to determine whether denial of debtor's discharge is appropriate under §727(a)(3). *See* D.A.N. Joint Venture v. Cacioli (*In re Cacioli*), 463 F.3d 229, 235 (2d Cir. 2006). First, the creditor must prove the debtor failed to keep or preserve books and records. Second, this failure must make it impossible to ascertain the debtor's true financial condition. *See In re Yerushalmi*, 393 B.R. 288, 297 (Bankr. E.D.N.Y. 2008); Pergament v. DeRise (*In re Nancy DeRise*), 394 B.R. 677, 2008 Bankr. LEXIS 2492, *23. Once the creditor has satisfied the elements, it is the debtor's burden to establish that the failure to produce records was justified in order to avoid a denial of discharge. *See In re Yerushalmi*, 393 B.R. 288, 297 (Bankr. E.D.N.Y. 2008).

In determining whether the failure is justified the Court should take into account the reasonableness of debtor's failure in the particular circumstances. *See id.* Debtor's education, experiences, and sophistication are some of the factors to consider in making this determination. *See In re Nancy DeRise*, 2008 Bankr. LEXIS 2492, *24; *In re Cacioli*, 463 F.3d 229, 235 (2d Cir. 2006). While the courts have not appeared to define sophistication explicitly, in the case *In re Smorto*, the bankruptcy court considered the debtor's lack of sophistication, which included looking at the highest level of education achieved by the debtor and his knowledge of business affairs. After analyzing these factors the bankruptcy court held that the debtor should not be denied discharge under §727(a)(3). On appeal the district court endorsed the bankruptcy court's approach to the consideration of the debtor's financial sophistication, or lack thereof, and stated that this information could be used "to support or negate the existence of fraudulent intent." 2008 U.S. Dist Lexis 19235, 13-15 (E.D.N.Y. 2008)

That case is analogous to the Debtors in the present case before this Court. Mrs. Moreo has completed high school like the debtor in *In re Smorto.* Prior to opening Moreo's Bagel Café, she was a part-time counter person in a bagel store for four years. Her deposition testimony shows that she lacked a necessary comprehension of proper business accounting. Mrs. Moreo deposited and withdrew money from the business bank account sporadically and did so without maintaining accurate records of the purposes of the deposits or withdrawals. She mostly ran the business via cash transactions, not checks. It seems evident that Mrs. Moreo failure to provide records was consistent with the way she ran the business that she was permitted to run. The Plaintiff was involved in the operation of the business for approximately six months. If he did not correct or just accepted this behavior, to now insist that Mrs. Moreo failed to keep adequate books and records seems odd in light of the fact that he knew how she was operating the

business. Thus, due to Mrs. Moreo's apparent lack of education, business experience, and sophistication, summary judgment with respect to §727(a)(3) will not be granted against the Debtors at this time. The Court would prefer to determine the degree of sophistication and other abilities of the parties by observing their testimony rather than from a reading of deposition testimony, which may result in a different conclusion.

Along with their opposition to summary judgment and cross motion for summary judgment, Debtors/Defendants provided about 270 pages of financial documentation from their accountants, which includes tax returns, income statements, payment stubs, worker's compensation policies, worksheets of expenses of the business, etc. From the record, it is unknown whether or not these documents are sufficient for a creditor to put together a factually accurate scenario of the business. As such summary judgment cannot be granted for the Debtors.

### 2. *Section 727(a)(4)(A)*

The Plaintiff argues that the Debtors' several amendments to their Schedules equate to fraudulently making a false oath or account allowing for a denial of discharge under §727(a)(4)(A). The majority of cases attempting to deny discharge pursuant to §727(a)(4)(A) requires the following five factors to be met: (1) debtor made a statement under oath; (2) the statement was false; (3) debtor knew the statement was false; (4) debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Dubrowsky*, 244 B.R. 560, 572 (E.D.N.Y. 2000) (quoted by *In Re Murray*, 249 B.R. 223, 232-233 (E.D.N.Y. 2000); *In re Smorto*). There does not appear to be any case law supporting the presumption that amending one's Schedules without more facts equates to a lie allowing for such a bar to discharge.

Assuming that the Plaintiff is able to prove the first, second, third and fifth factors, he must still prove the fourth element: fraudulent intent. Here, Plaintiff relies on the fact that the amendments to the Schedules and Means Test were false to begin with and that the amendments prove that the Debtors lied with fraudulent intent. However, there appears to be no authority that states an amendment to correct an original Schedule *ipso facto* satisfies fraudulent intent. Without additional facts or acts to establish intent to defraud, merely correcting and modifying their Schedules and Statement of Affairs does not rise to the level of a showing of intent to defraud.

Mrs. Moreo's lack of financial sophistication and her deposition testimony make it logical to believe that the Schedules were made without the intent to misrepresent, and were due to her inability to disclose her finances properly in the first place. It is well established that the use of sophistication is appropriate in determining fraudulent intent, whether it be in proving that intent did not exist, or that it did exist and should not be ignored. *See In re Hoyt*, 337 B.R. 463, 468 (W.D.N.Y. 2006); *Weiss v. Winkler,* 2001 U.S. Dist. LEXIS 5148, at \*4; *In re Hanson*, 373 B.R. 522, 527 (Bankr. N.D. Ohio 2007); *In re Johnson*, 313 B.R. 119, 129-30 (Bankr. E.D.N.Y. 2004); *In re Olwan*, 312 B.R. 476, 485 (Bankr. E.D.N.Y. 2004)

Debtors argue that their lack of sophistication was the reason for their failure to keep accurate records, but Plaintiff, relying on *In re Murray*, asserts that the sophistication of a Debtor is not a factor. However, research has shown that the Eastern District of New York has distinguished this opinion in Pergament v. Smorto (*In re* Smorto), 2008 U.S. Dist. LEXIS 19235, which concluded that "in determining whether the Debtor's false or inaccurate statements were innocent mistakes or intentional lies, the Bankruptcy Court was permitted to consider the Debtor's lack of financial sophistication, among other factors." *Id.* at \*18. The *Smorto* Court

8

stated that the lack of financial sophistication is not a factor that can be considered if it has already been shown that the debtor intentionally lied. *See id.* Here there has been no such showing that the Debtors intentionally omitted items from their Schedules, which were amended by the Debtors. Additionally, it is up to the Court to determine whether or not it finds the Debtors' assertion to be credible. This is not a step the Court will take at a summary judgment level based on the evidence before it. Thus, both the Plaintiff's request for summary judgment, and the Defendant's cross-motion for summary judgment, with respect to section 727(a)(4)(A) are denied.

**Conclusion:**

In light of the high standards that a party must meet in seeking to deny a debtor a discharge under Section 727, there are issues of fact that prevent the Court from granting summary judgment for either party at this time, and therefore both the Plaintiff's motion for summary judgment and the Defendant's cross-motion for summary judgment are denied in their entirety.

Furthermore, the parties are instructed to contact Chambers to schedule a pre-trial conference for this adversary proceeding in order to allow it to move forward towards trial.

Dated: Central Islip, New York
       December 1, 2008

                                        ***s/ Dorothy Eisenberg***
                                        Dorothy Eisenberg
                                        United States Bankruptcy Judge