UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re

VINCENT MOREO and
MARIAN NORMA MOREO,

              Debtors.
----------------------------------------------------------x
FRANK J. ROSSI, JR.,

              Plaintiff,

      - against -

VINCENT MOREO and
MARIAN NORMA MOREO,

              Defendants
----------------------------------------------------------x

Case No.: 07-71258-478

Chapter 7

Adv. Pro. No.:07-8256-478

## MEMORANDUM DECISION

*Appearances:*

    The Law Offices of Avrum J. Rosen, PLLC
    *Attorney for Plaintiff*
    By: Fred S. Kantrow, Esq.
    38 New Street
    Huntington, New York 11743

    Phillips, Weiner, Quinn & Artura
    *Attorney for Defendants*
    By: Richard F. Artura, Esq.
    165 South Wellwood Avenue
    P.O. Box 405
    Lindenhurst, New York 11757

Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge

Before the Court is Plaintiff's action seeking a determination that the Defendants should

be denied a discharge of their debts. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(J) and 11 U.S.C. §§ 727(a)(3) and 727(a)(4)(A). Based upon the record before the Court and the relevant case law, the Court finds that the denial of the Defendants' discharge is warranted. The following constitutes the Court's finding of fact and conclusions of law as mandated by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## FACTS

In June of 2003, the Defendants purchased North Fork Bagel, Inc. for $125,000 from Craig Grossetto and renamed it Moreo's Bagel & Café (the "Bagel Store"). The Defendants purchased the Bagel Store with a $50,000 home equity loan and a $75,000 note given in favor of Mr. Grossetto. The Defendants did not review the books and records of North Fork Bagel or do any due diligence prior to purchasing the bagel store. Mr. Moreo established a checking account at Washington Mutual for the Bagel Store but Mrs. Moreo was the one that made the deposits and issued checks from the checking account. Mrs. Moreo ran the day to day operations of the Bagel Store, met with the accountant and reviewed the tax returns relating to the Bagel Store. Mr. Moreo had limited or no knowledge of the administrative and financial operations of the Bagel Store.

Prior to running the Bagel Store, Mrs. Moreo was a part-time counter-person at another bagel store known as Bagel Buddies. She previously worked for Frank Rossi, the Plaintiff, ten years ago for six to eight months at Price Rite Carpets where she handled floor sales. She left Price Rite Carpets because she was diagnosed with multiple sclerosis and did not work for several years prior to taking the position at Bagel Buddies.

Mrs. Moreo operated the Bagel Store 7 days a week. It had wholesale accounts whereby it would sell bagels to restaurant and delicatessens. The wholesale customers would pay for their purchases in cash and/or by check. The Bagel Store also operated a retail business selling bagels and pastries to individual customers who entered the store. Other than $100 a week for 6 months in 2005, Mrs. Moreo stated that she did not take any salary or compensation for her work at the Bagel Store. Aside from Mrs. Moreo, the Bagel Store had one full time baker and at least one part-time employee who worked during the summers. Mrs. Moreo was paid "off the books" at Bagel Buddies and she adopted that practice to the Bagel Store. For the most part, she paid her employees "off the books" so not all of the wages for her employees were reported to the taxing authorities. For example, Defendants reported that the Bagel Store paid salaries and wages in the amount $10,750 for all of 2004 but Mrs. Moreo testified that she actually paid about $35,000 in wages to her employees.

Mrs. Moreo did not keep any ledger or formal records of her receipts, expenses or payments. As Mrs. Moreo testified, there was not an exact ledger; it was very chaotic; and she did not know how to take care of the books. Mrs. Moreo did not make daily deposits of her cash receipts from the Bagel Store into the bank account and any deposits into the business account was infrequent. At times, Mrs. Moreo would take the money at the Bagel Store home rather than deposit the money into the business checking account.

Retail sales would be recorded on the cash register but there is no evidence that all cash transactions relating to the wholesale customer accounts were recorded. Sometimes vendors or employees were paid in cash from the cash register and not all cash payments to employees were written down. Mrs. Moreo stated that on a weekly basis, she would write down on a piece of

paper what she received relating to the wholesale accounts and her expenses and would put the piece of paper, along with the register tape and any receipts in an envelope to be given to her accountant once a month or every other month. The accountant would transfer the information given to him onto a formal ledger. None of these envelopes or receipts were produced at trial.

In January 2005, the Bagel Store had problems meeting its expenses and was in danger of being evicted by its landlord for failure to pay rent. A mutual friend contacted Plaintiff ("Rossi") to have him look at the business. He came in and determined that the business could be made profitable and agreed to provide funds to enable the Bagel Store to continue operations. There is some uncertainty as to whether he decided to provide funds as a partner, a lender, or as a creditor. There is neither a written agreement between the parties that Rossi would be viewed as a partner in the business with a right to a share of the profits, if any, nor any promissory note provided in 2005 evidencing that the funds constituted a loan. Rossi used his personal funds to pay off approximately $30,000 of the Bagel Store's rent arrears. He worked at the Bagel Store from January 2005 to approximately June 2005 and some of his work included making bagel deliveries to the wholesale customers and collecting payment from them, and picking up supplies for the inventory. Whenever the Bagel Store could not pay a bill, Rossi provided the funds to make the payment. During the first 4 months of 2005, Rossi invested more than $50,000 in the Bagel Store. Rossi did not draw any paycheck or salary for the time he worked at the Bagel Store.

Rossi never saw any of the books and records of the Bagel Store and did not see Mrs. Moreo prepare a ledger. He attempted to show Mrs. Moreo some simple bookkeeping skills to keep track of sales and receipts. He allegedly did his own bookkeeping with respect to the Bagel

Store to determine how the business was doing although the Court does not have any evidence of such bookkeeping. In June of 2005, Rossi stated that he left because he was in poor health and because he suspected that Mrs. Moreo was improperly running the Bagel Store. By his own bookkeeping, the Bagel Store should have been profitable yet it was still unable to meet all of its expenses. The Court, however, has no evidence to support this representation.

He commenced an action in state court against the Defendants in 2006 to recover $56,000 he had put into the Bagel Store. The Defendants needed $3,000 to make a rent payment and approached Rossi for the necessary funds. Rossi allegedly required Mr. Moreo to sign a statement before he would provide the additional $3,000. Mr. Moreo signed a handwritten letter dated June 9, 2006 stating that he agrees to pay Rossi $56,000 upon the sale of the Bagel Store with the amount to be payable in cash. The letter also states that Craig Grossetto would be paid first. On June 13, 2006, the Debtors signed an Affidavit of Confession of Judgment in favor of Rossi in the sum of $56,000 arising from loans made by Rossi to the Defendants and a Judgment By Confession was entered by the state court on August 22, 2006.

The Debtors sold the business on November 13, 2006 to Graziano & Son Enterprise for approximately $72,700. The consideration consisted of $3,000 in cash, the assumption and satisfaction of the note given in favor of Craig Grossetto with an outstanding balance of approximately $52,000, the satisfaction of a debt in the approximate amount of $10,000 to Empire Bakery Equipment, Inc., the satisfaction of the Defendants' outstanding rent obligation in the approximate sum of $7,500, and the satisfaction of an outstanding $200 telephone bill.

The Defendants filed for Chapter 7 relief on April 13, 2007 (the "Petition Date"). For Mr. Moreo, this was his second chapter 7 case as he previously filed an individual bankruptcy

case in 1998 and was granted a discharge in that case.

The highest level of education obtained by both Defendants was a high school education. On the Petition Date, Mr. Moreo was employed by Wendys International as a service technician doing heating and air conditioning work. Currently, he is employed by Lane Associates doing the same type of work. According to the Defendants' Schedule I to the bankruptcy petition, Mr. Moreo earned approximately $4,593 a month from his employment at Wendys International and received a $1,000 a month contribution from his mother. Mrs. Moreo is unemployed and was receiving $400 a month on the Petition Date from worker's compensation and for permanent partial disability.

The initial meeting of creditors pursuant to 11 U.S.C. § 341 was conducted on May 15, 2007. On May 18, 2008, the Defendants filed Amended Schedules C, D, and F, an Amended Summary of Schedules, and Amended Statistical Summary of Certain Liabilities and Related Data. The Defendants modified their homestead exemption on Schedule C to reduce the claimed exemption from $122,551 to the statutorily permitted amount of $100,000 and to correct errors regarding which creditors listed on Schedule F relating to unsecured creditors should have been listed on Schedule D because these creditors held judgment liens. As amended, the Defendants scheduled $440,315 in secured debts, $62,015.71 of which is with respect to the funds given by the Plaintiff to the Bagel Store. The Defendants also scheduled $77,231.22 in unsecured debt some of which relate to the Bagel Store.

On May 23, 2007, the Trustee filed his report of no distribution stating that there was no non-exempt property to distribute. As a result, no deadline for filing proofs of claims has been set. The Trustee's report has not been rescinded and the time for the Trustee to object to

discharge has passed.

On October 5, 2007, Plaintiff timely filed this adversary proceeding seeking a determination that the Defendants should be denied a discharge of debts on the grounds that 1) the Defendants transferred, removed, destroyed, mutilated, or concealed property within one year of the Petition Date with the intent to hinder, delay or defraud a creditor under 11 U.S.C. § 727(a)(2)(A); 2) the Defendants falsified and failed to keep or preserve adequate records from which the Debtors' financial condition or business transactions might be ascertained under 11 U.S.C. § 727(a)(3); 3) the Defendants knowingly and fraudulently made a false oath or account in connection with their bankruptcy case under 11 U.S.C. § 727(a)(4)(A); and 4) the Defendants failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtors' liabilities under 11 U.S.C. § 727(a)(5).  The Defendants filed an Answer on November 27, 2007.

On January 31, 2008, the Defendants filed Amended Schedules B and C and an Amended Means Test Calculation. The Schedule B was amended to disclose the following assets: a) Mr. Moreo's 100% shareholder interest in the Bagel Store with no value, and b) three lawsuits.  The three lawsuits consisted of a personal injury lawsuit against Frank Capella relating to a motor vehicle accident on July 23, 2003 with a value of $7,500, a personal injury lawsuit against Beach Bar, Inc. for an accident that occurred on February 23, 2005 with a value of $15,000, and a workers' compensation claim against his employer for an accident that occurred on February 23, 2005 with a value of $7,500.  The Defendants amended their Schedule C to include a $7,500 personal injury exemption with respect to each of the three lawsuits added to Schedule B.  These assets were not raised in the Complaint and were voluntarily disclosed by the Defendants after they went over their schedules again with new bankruptcy counsel.

The Defendants also amended their Means Test Calculation to include a $3,500 loan from Mrs. Moreo's brother which averaged $583.33 a month over a 6 month period, $308.38 in income from the operation of the Bagel Store, and an additional child that was mistakenly excluded from the Defendants' household size.  While the original Means Test showed that the Defendants' annualized current monthly income was less than the applicable median family income, the amendments resulted in the Defendants' annualized current monthly income being more than the applicable median family income and necessitated a calculation of allowed deductions under § 707(b)(2).  One of the deductions listed in the amended Means Test is a $175 expense allegedly relating to the average monthly amount the Defendants actually paid for telecommunication services other than basic home telephone service, such as cell phones, pagers, call waiting, caller id, special long distance, or internet service, to the extent necessary for the Defendant's health and welfare or that of the Defendants' dependents. Although Mrs. Moreo suffers from multiple sclerosis, Mr. Moreo testified that the expense comprised of a $40 cell phone bill and $135 for the family's cable television service. There was no evidence that the cell phone and cable television expenses were related to the health and welfare of the Defendants or that of their dependents.  Even with the corrections, the Defendants passed the Means Test for purposes of 11 U.S.C. § 707.

On July 31, 2008, the Plaintiff filed a motion for summary judgment. On September 12, 2008, the Defendants filed a cross motion for summary judgment and opposition to the Plaintiff's motion.  While the Court found the Defendants to be somewhat unsophisticated with respect to business dealings, the Court preferred to determine the degree of sophistication and other abilities of the parties and their intent by observing their testimony rather than from a

reading of deposition testimony which may result in a different determination. Moreover, the Court was unable to determine from the financial documentation presented for parties' respective motion for summary judgment whether the documents were sufficient for a creditor to put together a factually accurate scenario of the Bagel Store's business. Accordingly, pursuant to a Memorandum Decision and Order, dated December 1, 2008, the Court denied the motion and cross motion for summary judgment.

The case proceeded to trial which was held on June 1, 2009 on the causes of action relating to denial of discharge under § 727(a)(3) and (a)(4)(A). As the Plaintiff did not make any prima face case regarding § 727(a)(2)(A) and 727(a)(5), the Court will not consider those causes of action.

With respect to 11 U.S.C. § 727(a)(3), Plaintiff argued that the Defendants falsified their records in that the corporate tax returns relating to the Bagel Store contained false statements with respect to the wages paid to employees, the payments made to vendors, the payments made to the landlord and the actual revenue receipts of the Bagel Store. In addition, the corporate tax returns of the Bagel Store did not reconcile with the various journals and bank statements relating to the Bagel Store.

With respect to 11 U.S.C. § 727(a)(4)(A), Plaintiff argued the Defendants omitted assets from their original and first amended Schedules and income from the Defendants' amended Means Test and included inappropriate deductions in the Means Test with the reckless indifference to the truth with regard to the information contained in their schedules and on the Means Test. Plaintiff alleges that the Defendants only made corrections to their Schedules to disclose the Defendants' interest in the Bagel Store and three lawsuits by the Defendants in

response to this adversary proceeding and that the debtors could not adequately explain discrepancies found in their amended Means Test and Schedules.

## DISCUSSION

*I.     Applicability of 11 U.S.C. § 727(a)(3).*

Section 727(a)(3) of the Bankruptcy Code provides that the court shall grant the debtor a discharge, unless:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case.

11 U.S.C. § 727(a)(3). The purpose of § 727(a)(3) is to "insure that the trustee and the creditors receive sufficient information to enable them to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct the debtor's business transactions." *State Bank of India v. Sethi (In re Sethi)*, 250 B.R. 831, 837 (Bankr. E.D.N.Y. 2000)(citations omitted); see also *In re Underhill*, 82 F.2d 258, 260 (2d Cir.), *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936).

To determine whether denial of a debtor's discharge is appropriate under § 727(a)(3), the plaintiff must prove that 1) the debtor failed to keep or preserve books and records, and 2) this failure must make it impossible to ascertain the debtor's true financial condition. *See Doublet, LLC v. Palermo (In re Palmero)*, 370 B.R. 599, 612 (Bankr. S.D.N.Y. 2007); *In re Sethi*, 250 B.R. at 838. Although the plaintiff has the burden of proof, it is the debtor who must provide adequate financial records in the first instance. *In re Sethi*, 250 B.R. at 838. A creditor is not required to sift through the documents and attempt to reconstruct the debtor's business affairs.

*In re Juzwaik*, 89 F.3d 424, 429 (7th Cir. 1996)(citing *In re Frommann,* 153 B.R. 113, 118 (Bankr. E.D.N.Y. 1993)). In determining whether the debtor has provided adequate records to enable the trustee and creditors to trace the debtor's financial history and business transactions and to ascertain the debtor's financial condition, the Court may consider the following: 1) the complexity and volume of the business; 2) the amount of the debtor's obligations; 3) whether the debtor's failure to preserve books and records was due to the debtor's fault; 4) the debtor's education, business experience and sophistication; 5) the customary business practices for record keeping in the debtor's type of business; 6) the degree of accuracy disclosed by the debtor's existing books and records; 7) the extent of any egregious conduct on the debtor's part; and 8) the debtor's courtroom demeanor. *In re Frommann,* 153 B.R. at 117.

If the Court finds that the records were inadequate, then the burden shifts to the debtor to justify any deficiencies. In determining whether the failure is justified the Court should take into account the reasonableness of the debtor's failure in the particular circumstances, such as the debtor's education, experience, the sophistication of the debtor's business, the debtor's personal financial structure, and any special circumstances that may exist. *In re Sethi*, 250 B.R. at 839.

In the case before this Court, Mrs. Moreo operated a single business in which she was actively involved on an operational, administrative and financial basis. Although Mr. Moreo was the 100% shareholder and the signatory on the business bank account, it was Mrs. Moreo who paid the employees and vendors, wrote the checks, met with the accountant, and determined what inventories were needed. While operating the Bagel Store required hard work on Mrs. Moreo's part, the complexity and volume of the Bagel Store business should have been manageable as she had employees and an accountant. As the responsible person for the Bagel

Store, Mrs. Moreo was responsible for the store's books and records. She was obligated to keep track of the sales and expenses and the payments as such record keeping is required of any business owner regardless of the size of the business. In a cash-based business such as the Bagel Store, accurate and complete record keeping is necessary in order for creditors to determine the financial condition and business transactions of the business and to determine the sales and withholding taxes that are due to the taxing authorities.

It is clear that Mrs. Moreo failed to keep accurate and complete financial records of the business transactions of the Bagel Store. The financial records produced at trial were incomplete and the information reflected in those documents were inaccurate as the records did not fully reflect all the payments made. Mrs. Moreo often paid vendors and her employees by cash from the cash register as opposed to checks and knowingly reported only some and not all of the wages paid. Although Mrs. Moreo stated that she had a book that kept track of how much money came in and how much money went out each day, she did not submit any such book into evidence. Moreover, the monthly handwritten journals that were admitted into evidence contained only one cash receipt number and one cash disbursement number for each month. There were no separate entries for each day or week. The cash disbursement entries also lacked any description as to what expenses were paid by cash. The Defendants did not retrieve the receipts and other information previously given to the accountant in the envelopes after he went through the information that would support the handwritten journals. In addition, the Court cannot reconcile the amounts on the journals with the Defendants' bank statements. Accordingly, neither the Plaintiff nor the Court can be certain that Mrs. Moreo properly recorded all the sales, especially the commercial, wholesale accounts, and that she accounted for the

payment of all the expenses.

While Mrs. Moreo paid her employees off the books because she learned about the practice at her prior employment, what was done at her prior place of employment does not render it a customary and acceptable business practice. Moreover, Mrs. Moreo was untruthful when she filed tax returns based upon inaccurate financial records. Although an accountant prepared the tax returns and journals, those documents were inaccurate and unreliable because the accountant relied upon inaccurate and incomplete receipts and documents Mrs. Moreo gave him. Based upon the documents provided by the Defendants, the Court is unable to determine how much revenue the Bagel Store generated, what expenses were incurred, which expenses were paid in cash and which were paid by check, the amount of those payments and whether those payments were appropriate, the net profit/loss generated by the Bagel Store and the cash flow of the business. Because some of the Defendants' unsecured debt that the Defendants seek to discharge relates to their liability with respect to the Bagel Store, the inability of the Court and creditors to determine the Defendants' business transactions is material. Accordingly, the Court finds that the books and records provided by the Defendants to be inadequate and unreliable.

The inadequacy and unreliability of the Bagel Store's business records were a result of Mrs. Moreo's failure to maintain accurate bookkeeping. Mrs. Moreo has completed only a high school education and lacked prior business and accounting experience. However, Mrs. Moreo's lack of business or accounting sophistication was not justified under the circumstances. Mrs. Moreo hired an accountant who stopped by the Bagel Store every month or two to discuss the Bagel Store's business and collect the receipts and whatever information she provided him to created the general journals, balance sheets, income statements and tax returns. Mrs. Moreo did

not need to be familiar with the accounting rules in order to keep a record of her sales to retail and wholesale customers, the business expenses and the payments she made. She knew she had to keep some journal or record of such information. Indeed, she submitted into evidence some of the handwritten journals that she had given her accountant to transfer onto a formal general journal and balance sheet. Some of those handwritten journals have the name "Bagel Buddies" written on top indicating that Mrs. Moreo may have borrowed the forms for record keeping from her prior place of employment. "Where the nature of a debtor's business operations indicates that others in like circumstances would ordinarily keep financial records, a debtor cannot justify his failure to maintain records merely by stating that he did not comprehend the need for them or that it was not his practice to keep business record." *Bay State Milling Co. v. Martin (In re Martin)*, 141 B.R. 986, 997 (Bankr. N.D. Ill. 1992). Moreover, while Rossi worked at the Bagel Store in 2005, he attempted to show Mrs. Moreo basic bookkeeping skills. Mrs. Moreo's lack of prior business experience and sophistication does not justify her failure to keep accurate books and records and she has not presented any special circumstance that would justify otherwise.

Because Mrs. Moreo's failure to keep adequate books and records of the Bagel Store makes it impossible to ascertain the Defendants' true financial history and to reconstruct the business transactions of the Bagel Store, a denial of Mrs. Moreo's discharge under 11 U.S.C. § 727(a)(3) is appropriate.

II.     *Applicability of 11 U.S.C. § 727(a)(4)(A).*

Section 727(a)(4) provides that a debtor would be denied a discharge if the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account. 11 U.S.C. § 727(a)(4)(A). The party objecting to discharge must prove by preponderance of the

evidence that "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive; and (5) the statement related materially to the bankruptcy case." *Pergament v. Smorto (In re Smorto)*, No. 07-CV-2727 (JFB), 2008 WL 699502, *4 (E.D.N.Y. March 12, 2008) quoting *Dubrowsky v. Estate of Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 572 (E.D.N.Y. 2000). In determining whether the debtor made a false statement with the intent to deceive, the court can consider, among other factors, the debtor's level of financial sophistication. *In re Smorto*, 2008 WL 699502, *5. Even though actual intent must be established, the aggregate of misstatements and omissions of fact can demonstrate a pattern of reckless disregard for the truth and intent of concealing information from the Court and its creditors. *Micro Connections, Inc. v. Shah (In re Shah)*, 388 B.R. 23, 38 (Bankr. E.D.N.Y. 2008)(citing *Bank of India v. Sapru (In re Sapru)*, 127 B.R. 306, 317 (Bankr. E.D.N.Y. 1991)).

Where information is omitted, the party objecting to discharge must show that the information was material and was omitted for the purpose of perpetrating a fraud and not simply as a result of carelessness or failure to understand his counsel. *In re Smorto*, 2008 WL 699502, *6. A matter is material if it bears a relationship to the debtor's "business transactions or estate which would lead to the discovery of assets, business dealings or existence or disposition of property." *In re Murray*, 249 B.R. 223, 228 (E.D.N.Y. 2000). 'The fact that the Debtor has failed to disclose its interest in property that turns out to have little or no value to the estate may be the basis for denying the debtor its discharge because "the determination of relevant and importance of the question is not for the Debtor to make. It is the Debtor's role simply to consider the question carefully and answer it completely and accurately."' *In re Sapru*, 127 B.R.

at 315 (quoting *In re Diodati*, 9 B.R. 804, 808 (Bankr. D. Mass. 1981)).

In the case before the Court, the Defendants exhibited a reckless disregard for the truth with respect to the information contained in the Schedules and amended Means Test Calculation. Both Defendants were represented by experienced bankruptcy counsel and had the time to carefully complete the Schedules and Means Test Calculation. The Defendants failed to list the personal injury action and worker's compensation claims relating to accidents that occurred in July 2003 and February 2005. These were prepetition claims that the Defendants knew about and failed twice to list in their Schedules when asked about whether they had any contingent and unliquidated claim of any nature. The failure of the Trustee at the meeting of creditors to question whether the Defendants had any potential or existing claims against third parties does not excuse the Defendants' failure to disclose such potential assets. Such failure could prevent a trustee from timely investigating the value of such claims. While corrective disclosure was made before the Plaintiff discovered the omission, the effect of a false statement is not cured by correction in an amended schedule or by subsequent testimony. *In re Tabibian*, 289 F.2d 793, 797 (2d Cir. 1961); see also *In re Ingle*, 70 B.R. 979, 984 (Bankr. E.D.N.C. 1987)("The fact that the property in question is included in the debtor's amended petition does not excuse its original omission.").

Similarly, the Defendants failed to list Mr. Moreo as a 100% shareholder of Moreo's Bagel & Café in their Schedule B. Although the value of Mr. Moreo's shares is of no value given that the Defendants sold the assets of the Bagel Store prepetition, the determination of whether Mr. Moreo's shares are relevant or important to the bankruptcy is one that the Trustee should make and not the Defendants.

In addition, the Defendants' inclusion of a cable television bill in their amended Means Test without a reasonable explanation as to why such an expense would be related to the health and welfare of the Defendants or their dependents is another example of the Defendants' reckless disregard for the truth. While the Court observed that the Defendants appeared confused at times during the trial and may be somewhat unsophisticated about financial matters, the Defendants' inclusion of such an expense on their amended Means Test is not a result of carelessness or confusion but rather demonstrates an indifference and disregard of the Bankruptcy Code. This behavior is also evidenced and supported by the Defendants' similar disregard for the federal and local tax laws when they deliberately paid employees of the Bagel Store off the books and failed to report these payments as discussed above. The Defendants have not provided any evidence that such false statements were not intentional misrepresentations.

These misrepresentations relate materially to the Defendants' bankruptcy estate. While each of the misstatements and omissions taken individually may not rise to the level of materiality, cumulatively, they show a pattern of untruth and deceit. These misstatements and omissions failed to give the Trustee, creditors and the Court a clear picture of the Defendants' financial condition and their assets.

The court finds that the Plaintiff has established that the Defendants intentionally made a false oath by a preponderance of evidence and the Defendants have failed to provide credible justifications for their erroneous and misleading statements in the Schedules and amended Means Test. While Mr. Moreo had minimal involvement with the Bagel Store and a denial of his discharge is not warranted 11 U.S.C. § 727(a)(3), based upon the factors discussed above and the totality of circumstances, the Court finds that both Defendants' discharge should be denied

pursuant to 11 U.S.C. § 727(a)(4)(A).

## CONCLUSION

Based upon the foregoing, Mrs. Moreo's discharge is denied pursuant to 11 U.S.C. § 727(a)(3), and Mr. Moreo's and Mrs. Moreo's discharge is also denied pursuant to 11 U.S.C. §§ 727(a)(4)(A).


Dated: Central Islip, New York
       September 10, 2009

                                          ***s/Dorothy Eisenberg***
                                          Dorothy Eisenberg
                                          United States Bankruptcy Judge